Matter of Scheurer (2023 NY Slip Op 01195)

Matter of Scheurer

2023 NY Slip Op 01195

Decided on March 8, 2023

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 8, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
REINALDO E. RIVERA, JJ.

2021-00272

[*1]In the Matter of William Henry Scheurer, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; William Henry Scheurer, respondent. (Attorney Registration No. 3039278)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. The Grievance Committee commenced this disciplinary proceeding pursuant to 22 NYCRR 1240.8 by the service and the filing of a notice of petition and a verified petition, both dated January 12, 2021, and the respondent served and filed a verified answer, verified on January 30, 2021. By decision and order on application dated April 20, 2021, this Court referred the matter to the Honorable Ralph T. Gazzillo, as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on May 24, 2000.

Catherine A. Sheridan, Hauppauge, NY (Rachel Merker of counsel), for petitioner.
Law Offices of Thomas F. Liotti, LLC, Garden City, NY, for respondent.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Tenth Judicial District served the respondent with
a notice of petition and a verified petition, both dated January 12, 2021, containing five charges of professional misconduct. The respondent served and filed a verified answer verified on January 30, 2021, essentially denying all the allegations in the petition. Subsequently, the Grievance Committee served and filed a statement of disputed and undisputed facts dated February 18, 2021, and requested the appointment of a special referee for a hearing in view of the disputed facts. The respondent served and filed a reply to the Grievance Committee's statement of disputed and undisputed facts dated March 9, 2021, disputing the charges and asserting that the appointment of a special referee was unwarranted. By decision and order on application dated April 20, 2021, this Court referred the matter to the Honorable Ralph T. Gazzillo, as Special Referee, to hear and report. A pre-hearing conference was held on June 28, 2021, and a hearing was conducted on August 17, 2021. During the hearing, the Grievance Committee made an application for leave to amend the petition to add charge six to the petition, which application was opposed by the respondent. The Special Referee reserved decision until the parties submitted their post-hearing memorandum. In a report dated October 20, 2021, the Special Referee granted the Grievance Committee's application for leave to amend the petition to add charge six, and sustained all six charges. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper. The respondent submits papers in opposition to the Grievance Committee's motion to confirm the Special Referee's report, or in the alternative, submits that an [*2]admonition or "private censure" would be commensurate with the offense and the precedent of this Court. In view of the evidence adduced at the hearing, we find that the Special Referee properly sustained charges one through five, and those charges are sustained. However, we find that the Special Referee improperly sustained charge six, as the evidence did not support the findings of the Special Referee regarding that charge, and that charge is not sustained.
The Petition 
Charge one alleges that the respondent misappropriated funds entrusted to him as a
fiduciary incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0).
At all times relevant herein, the respondent maintained an attorney trust account at Apple Bank for Savings, account ending x5701 (hereinafter the escrow account). The respondent was the sole signatory on the escrow account. As reflected below, from January 1, 2018, through May 2018, the balance in the escrow account was deficient on multiple occasions.
On January 1, 2018, the respondent was required to maintain at least $74,785 in the
escrow account for the following real estate client matters:
MatterAmount 
Murray to Meranti $34,200
Colavito to Salvatore$ 1,435
Miller to Papik$ 3,150
Tibaldi to Zelaya$ 5,000
Pupino to Krolewicz$ 3,000
Brown to Tuohy$ 7,500
Cornelia to Brazier$ 5,000
McInnes to Mero$ 5,000
Black to Calabrese$10,500
The actual balance in the escrow account on January 1, 2018, was $41,281.76, which was $33,503.24 below the amount the respondent was required to maintain.
As of January 25, 2018, the respondent was required to maintain at least $34,474.56
in the escrow account for the following matters:
MatterAmount 
Murray to Meranti $5,054.56
Black to Calabrese$ 420
Unidentified Client$9,500
Brown to Tuohy$7,500
Cornelia to Brazier$5,000
McInnes to Mero$5,000
McInnes to Leddick$2,000
On January 25, 2018, the escrow account balance was $971.32, which was $33,503.24 below the amount the respondent was required to maintain.
On February 28, 2018, the respondent was required to maintain at least $47,500 in
the escrow account for the following matters:
MatterAmount 
Unidentified Client$9,500
Brown to Tuohy$7,500
Unidentified Client$9,500
Cornelia to Brazier$5,000
McInnes to Mero$5,000
McInnes to Leddick$2,000
Weeks to Baldwin$9,000
On February 28, 2018, the escrow account balance was $13,946.76, which was $33,553.24 below the amount the respondent was required to maintain.
As of March 31, 2018, the respondent was required to maintain at least $57,500 in
the escrow account for the following matters:
MatterAmount 
Unidentified Client$9,500
Brown to Tuohy$7,500
Unidentified Client$9,500
Cornelia to Brazier$5,000
McInnes to Mero$5,000
McInnes to Leddick$2,000
Weeks to Baldwin$9,000
Apetino to Highridge$5,000
Kundrat $5,000
The escrow account balance on March 31, 2018, was $23,721.76, which was $33,778.24 below the amount the respondent was required to maintain.
As of April 27, 2018, the respondent was required to maintain at least $43,000 in the
escrow account for the following matters:
MatterAmount 
Unidentified Client$9,500
Unidentified Client$9,500
Cornelia to Brazier$5,000
McInnes to Mero$5,000
Weeks to Baldwin$9,000
Kundrat to Property Options $5,000
On April 27, 2018, the escrow account balance was $9,146.76, which was $33,853.24 below the amount the respondent was required to maintain.
As of May 30, 2018, the respondent was required to maintain at least $38,125 in the escrow account for the following matters:
MatterAmount 
Unidentified Client$9,500
Unidentified Client$9,500
McInnes to Mero$ 125
Weeks to Baldwin$9,000
Kundrat to Property Options $5,000
Papik to Mourse$5,000
On May 30, 2018, the actual balance of the escrow account was $5,250, which was $32,875 below the amount the respondent was required to maintain.
Thus, at the end of each month, the respondent had the following shortfalls in the escrow account:
Month in 2018 Shortfall Amount 
January$33,503.24
February$33,553.24
March $33,778.24
April $33,853.24
May $32,875
Charge two alleges that between January 2018 and May 2018, the respondent failed to make accurate entries of all financial transactions related to the escrow account in a ledger book or similar record at or near the time of the event recorded, in violation of rule 1.15(d)(2) of the Rules of Professional Conduct. Further, on January 3, 2018, and February 3, 2018, the respondent deposited $9,500 into the escrow account, for which he was unable to identify the source of the funds or the purpose of the deposits.
Charge three alleges that the respondent made cash withdrawals from the escrow account, in violation of rule 1.15(e) of the Rules of Professional Conduct. Between March 3, 2018, [*3]and June 8, 2018, the respondent made cash withdrawals from the escrow account as follows:
Date Amount 
March 3, 2018 $ 50
March 17, 2018 $100
March 31, 2018 $ 75
April 14, 2018 $ 75
May 18, 2018$ 71.76
May 25, 2018$350
June 8, 2018$200
Charge four alleges that the respondent failed to properly title the escrow account, in violation of rule 1.15(b)(2) of the Rules of Professional Conduct, in that the escrow account is titled "WILLIAM H. SCHEURER, III."
Charge five alleges that based on the above described misconduct, the respondent engaged in conduct adversely reflecting on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct.
The Hearing Evidence 
The respondent testified on his own behalf and repeatedly stressed that he never touched or used client funds for personal use and that he had an unblemished disciplinary record. The respondent explained that while the balance in the escrow account may have been below the amount charged in the petition, the funds were always intact in a savings account he maintained at TD Bank. He also repeatedly testified that he opened the TD Bank savings account to provide him with more convenient banking hours at a time when he was caring for his seriously ill father and other ill family members. However, the record reflects that the TD Bank savings account was opened in December 2015, more than seven years after his father's death in August 2008. The respondent further testified that he considered the TD Bank savings account an "alter ego" of the escrow account and that he had intended to treat both accounts as if they were one account. The respondent, however, could not pinpoint any deposit in the TD Bank savings account that was not his funds. When confronted with the TD Bank savings account statements that contained balances that did not cover the shortfalls in the escrow account, the respondent did not provide a sufficient explanation. He claimed that since the Grievance Committee had not previously inquired of him regarding this issue, he did not have an opportunity to review his records and therefore could not provide an explanation. This is contrary to his previous testimony during his examination under oath, where he testified that he knew exactly what was in his TD Bank account and he followed the account with due diligence.
The Special Referee's Report 
The Special Referee found that
"Focusing . . . on the Respondent's credibility, . . . there were numerous occasions where his testimony strayed from the topic. This repeated evasiveness while [simultaneously] pursing self-serving matters was at best unresponsive and at worst intentional obfuscation. There were, in fact, occasions where this [tendency] prompted the undersigned to admonish him for such behavior. As a result, his elusiveness tended to undermine both the accuracy and trustworthiness of his presentation.
"Moreover, this impression of his incredibility and/or lack of candor was dramatically reinforced by his responses to the Charges. For example, his explanation is that the TD Bank Account's balances offset the deficits of the Apple Account. On each of the four dates in question, however, the evidence demonstrated that the difference between the two was thousands of dollars apart. In simplest terms, his explanation not only 'didn't add up,' it wasn't even close.
"Similarly, his contentions that cash withdrawals were for 'minimal' amounts of $8, $9, $10, $12[,] $20 and $50 FedEx and such other expenses does not satisfactorily comport with the evidence that they were in fact for $50, $75 (twice), $100, $200 and $350.
* * *
"There remains the Committees' 2003 Letter of Caution [whereby the respondent was cautioned of his duty to promptly notify a client upon receipt of client funds and to not issue checks from his escrow account without sufficient corresponding funds on deposit]. While Respondent claimed his record was 'pristine' the mere shadow of that incident more than negates any such categorization. Coupled with that is the manner in which he addressed it: denial, followed by denying the receipt of the Letter from the Committee."
Findings and Conclusion 
In view of the evidence adduced at the hearing, we find that the Special Referee properly sustained charges one through five, and those charges are sustained. However, we find that the Special Referee improperly sustained charge six, as the evidence did not support the findings of the Special Referee regarding that charge, and that charge is not sustained. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted to the extent that charges one through five are sustained, and denied to the extent that charge six is not sustained.
In mitigation, the Court has considered the positive character letters submitted. This is outweighed, however, by the Special Referee's findings, with which we agree, that the respondent's testimony at the hearing was "unconvincing and unworthy of belief." Although the respondent admitted to bookkeeping errors, he refused to admit to other wrongdoing which was clearly evidenced by the bank records, including that he withdrew cash from the escrow account and failed to title the escrow account in accordance with rule 1.15(b)(2) of the Rules of Professional Conduct.
Given the repeated unconvincing testimony, even after being confronted with the bank records proving otherwise, under the totality of the circumstances, we conclude that the respondent's conduct warrants his suspension from the practice of law for a period of five years.
LASALLE, P.J., DILLON, DUFFY, BARROS and RIVERA, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted to the extent that charges one through five are sustained, and denied to the extent that charge six is not sustained; and it is further,
ORDERED that the respondent, William Henry Scheurer, is suspended from the practice of law for a period of five years, commencing April 7, 2023, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than September 8, 2027. In such application (see 22 NYCRR 1240.16, 691.11), the respondent shall furnish satisfactory proof that during the period of suspension, he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, William Henry Scheurer, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, William Henry Scheurer, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Maria T. Fasulo
Clerk of the Court